# PAUL *v.* JOHNSON.

PATENTS; INTERFERENCE; DILIGENCE; REDUCTION TO PRACTICE.

1. Where both parties to an interference stand upon constructive reduction to practice only, consisting of the filing of their respective applications, the burden is on the junior party, not only to show priority of invention, but that he was in the exercise of reasonable diligence when his opponent entered the field.

2. Where it appeared that the junior applicant in an interference case was the first to conceive and make disclosure of the invention, but the last to constructively reduce it to practice by filing his application about five years and seven months after conception, and more than four months after the application of the senior party (who also relied upon constructive reduction to practice) had been filed, and the reason urged by the junior party for his delay in filing his application was that he was sick, the evidence was examined and reviewed; and, it appearing that three years after conception and disclosure he had made a drawing of the invention showing a definitely matured conception of the invention; that he might have made application at pleasure at any time after conception, or at least at any time after the date of such drawing; that the drawing was made, not for the then present use, but for future use in having the invention patented and to constitute written evidence of the invention; that after it was made, it was put away and locked up; that the junior applicant filed nine other applications in the Patent Office during those years, seven of which disclosed inventions of a kindred character to the invention of the issue,—it was *held* that he was lacking in diligence, and not entitled to an award of priority of invention.

3. Where both parties to an interference rely upon constructive reduction to practice, consisting of the filing of their respective applications, and it appears that the junior party was guilty of a want of reasonable diligence, a contention by him that he should nevertheless prevail because, after he had become active, the senior party was guilty of lack of diligence, cannot prevail, as it would contravene the well-settled principle of the patent law that the first to reduce to practice is prima facie the first inventor and entitled to a patent. Lack of diligence cannot be imputed to a party who first reduces to practice, since he was in fact the first to give the invention to the public by a reduction to practice. (Following *Yates* v. *Huson*, 8 App. D. C. 93; *Bader* v. *Vajen*, 14 App. D. C. 241; *Austin* v. *Johnson*, 18 App. D. C. 83.)

No. 232.   Patent Appeals.   Submitted November 13, 1903.   Decided February 2,
1904.

HEARING on an appeal from a decision of the Commissioner
of Patents in an interference proceeding.            *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Kenyon & Kenyon* and *Mr. Wallace Greene* for the
appellant.

*Mr. Wm. W. Dodge* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This is an appeal taken in an interference proceeding from
the decision of the Commissioner of Patents.   The interference
was declared between the application of Andrew G. Paul, filed
August 5, 1896, and the application of Warren S. Johnson,
filed April 1, 1896.   The subject-matter of the respective claims
for patent is an improvement in heating systems.   The issue
of the interference is declared in a single count and in the
following terms:

"In combination with a radiator, a supply-pipe for deliver-
ing a heating medium thereto, a valve for regulating the de-
livery of heating medium, a fluid-pressure motor for actuating
said valve, a pipe communicating with the fluid-pressure motor
and with the radiator, an exhausting device communicating
with said pipe, a vent for said pipe located between the motor
and the exhauster, and a thermostatic valve applied to said
vent."

Neither party claims to have reduced his invention to actual
practical use.   Both stand upon constructive reduction to prac-
tice.   Paul being the junior party upon record the burden of
proof is upon him to show, not only priority of invention, but
that he had been and was, at the time his opponent entered the
field, in the exercise of due and reasonable diligence in perfect-

ing his invention and in the assertion of his right thereto, as opposed to the claim of Johnson, the senior party in the office and in the assertion of his claim.

In his preliminary statement, Paul alleges that he conceived the invention of the issue on or about the 1st of January, 1891; that he made drawings of said invention, and about the same time he explained the invention to others, but that he has never made a model of the invention in issue, and that he has never embodied the invention in a full heating system.

Johnson, in his preliminary statement, sets forth that he conceived the invention in issue on or about the 15th day of June, 1895, and communicated such invention to one or more persons on or about July 2, 1895; that drawings or sketches were made on or about July 2, 1895; but that no model of the apparatus was made, and that the invention has not been embodied in full-sized operative form, and has never been in public use, nor on sale. That other drawings were made subsequent to the date of the original drawings made.

The time from which each party can claim reduction to practice is that of the time of filing his application, thus establishing constructive reduction to practice; as neither party claims to have made a practical device embodying the invention before that time, and therefore does not claim to have reduced his invention to actual practical use.

All the tribunals of the Patent Office have proceeded upon the assumption, which seems to be well founded in fact, that conception and disclosure on the part of both Paul and Johnson had been established with reasonable certainty as alleged in their respective preliminary statements; and we are satisfied that they were right in that conclusion. The question, and, indeed, the only material question involved, is one of reasonable diligence on the part of Paul in reducing his invention to practice as against the claim of Johnson. Paul was first to conceive and make disclosure of the invention, but last to reduce to constructive practice by filing his application on the 5th of August, 1896—about five years and seven months after conception, and more than four months after the application of Johnson had

been filed. The Examiner of Interferences decided that John-
son was entitled to priority, because of the want of diligence on
the part of Paul. This ruling was reversed on appeal to the
examiners-in-chief, upon the ground that, in the opinion of the
board, composed of two members, there was no lack of diligence
on the part of Paul, and he was therefore entitled to priority.
On appeal to the Commissioner of Patents this latter ruling
was reversed, and priority of invention was awarded to John-
son; the Commissioner being of opinion that Paul was lacking
in diligence. It is from this decision of the Commissioner that
this appeal is taken by Paul.

The reason set up and urged by Paul for the delay that oc-
curred between the time of his conception and disclosure of the
invention to the time of his constructive reduction to practice
by filing his application is that he was sick, and therefore un-
able to perfect and adopt his invention at or before the time
when his opponent Johnson entered the field. If this conten-
tion was clearly supported by the evidence it would afford a
good answer to the claim of priority by Johnson. But the evi-
dence fails to support his contention; that is to say, it fails to
show a continued disability that would excuse diligence during
the entire period when diligence was required to be exercised.

As already stated, Paul's conception and disclosure were as
early as 1891. By the evidence produced by him, it is shown
that on October 25, 1894, he had made the drawing, Paul's
Exhibit No. 1, which, coupled with the oral evidence of wit-
nesses, proves a definitely matured conception of the invention
of the issue before that time. Paul's witness Shiffington proves
that, in 1891, a disclosure was made to him so complete and
definite that he could have given the necessary information and
details of the invention from which an application could have
been prepared for a patent covering the invention as now
claimed. If this be so, there was no reason or necessity for the
long delay in making the application; and other circumstances
in the case strongly tend to substantiate this fact. Paul could
have made the application at pleasure after conception; cer-
tainly at any time after October 25, 1894, the time at which,

as it appears, he had procured to be made the drawing, Paul's Exhibit No. 1. This drawing of Paul's, of October 25, 1894, appears to have been made, according to his own account, not for the then present use, but for future purposes; for he says that his purpose in having it made was "that he might have the system patented." It is true, as said by the Commissioner, Paul does not say in his testimony that the drawing was made to form a part of an application for a patent; and it does not appear to be of a character required for that purpose. As concluded by the Commissioner in his opinion, the drawing was apparently intended merely to constitute written evidence of his invention, as he directed the draftsman to date it, and make a minute thereof for that purpose, and he at once put it away in his desk with his private papers, and locked it up. This drawing, as it appears, did not include the exhauster, because, as stated by the draftsman Perry, that would be understood. Perry was a witness for Paul, and when asked why the drawing did not show an exhauster on the end of the air-pipe in the figure of the drawing of October 25, 1894, he replied that it was because it is generally understood that there is invariably an exhauster in connection with any application of the Paul system. Nor did this drawing include the thermostat, because Paul did not wish to disclose his plan of thermostatic control to those who might see the drawing. In regard to this omission from the drawing, the witness says:

"I asked Mr. Paul at the time if I should include the thermostat connection with the valve, and he said he thought it was unnecessary, as it would make the drawing more complicated, and was a matter he could cover by description. To the best of my recollection Mr. Paul also said that so long as he could cover the feature of the thermostat readily by description, and as it was a stock affair which could be applied by anybody to anything, he did not care particularly about conveying the idea to everybody who might see the drawing. I asked him at the time if I should not make another drawing and show a thermostat similar to the electrothermostat which controlled the heating system in the office of the John Hancock Building, where I

had previously been employed, and he thought the description would be sufficient. He simply wished to cover the main features."

And Paul himself gave substantially the same explanation. He says, in reply to the question as to what he supplied to Perry from which to make the drawing:

"I provided him with a detail sketch, and also with the diagram and a casing of the form I desired to use. I also explained to him that in making this drawing it was not necessary for him to show the connection to the thermostat on the wall as it would complicate the drawing, and that this sheet had other devices on it and would probably be seen by a number of people that I did not care to have see the plan of control by thermostat that I had devised. I explained to him fully the operation; also that any form of thermostat could be used that was adapted for the purpose."

This drawing was at once made, as directed, but instead of taking it to any attorney to have an application for patent prepared, Paul took the drawing and locked it up with his private papers, where it remained until brought forward for the purposes of this case.

But there are other admitted facts in the case that militate strongly against Paul's claim to priority. Paul was able to and did prepare and file several other applications for patents relating to heating systems, between September, 1895, and August 5, 1896. Why not have prepared and filed the application for patent for the invention now in question? There does not appear any reason for the delay, or for pushing other applications ahead of the present application. It is urged on behalf of Paul that between September, 1895, and February 28, 1896, the time of placing his claim in this case in the hands of his attorney, he was diligently employed in developing and perfecting this and allied inventions; but there is really no evidence upon which a rational conclusion can be based, that he was doing anything in regard to the present invention. It is not shown what remained to be done, after the drawing of October 25, 1894. He appears to have been employed in preparing

other applications for the office, but not the application in this case. Paul was asked as a witness:

"How many applications for patents were filed by you between the time of your return to business, after your sickness, in September, 1895, and August 5, 1896, including this latter date?"

The answer was, "Nine." He was then asked:

"How many of these applications related to the subject of thermostatic control of heating systems?"

And the answer was, "Seven." He was therefore engaged within the time mentioned in perfecting and adapting other heating systems of a kindred character, resulting in applications for patents; and if he could perfect and adopt other kindred inventions with a view to making applications for patents therefor, it is difficult to perceive why he could not have perfected, if it required perfecting, the present application before the time at which it was filed.

It is urged on behalf of Paul, that even though he were lacking in diligence up to February 28, 1896, the time when he communicated with and placed the matter of his claim to invention in the hands of his counsel, he should, nevertheless, prevail, because of the alleged lack of diligence on the part of Johnson, and from which time Paul had become active. But this contention, if sustained, would contravene a well-settled principle of patent law. As well said by the Commissioner in his opinion, it is a fundamental principle of patent law that the first to reduce to practice is prima facie the first inventor and entitled to a patent. Prior to the act of July 4, 1836, his right was absolute and subject to no exception. It has been repeatedly held by the Supreme Court of the United States, that he is to be regarded as the inventor and entitled to the patent who first brought the machine to perfection and made it capable of useful operation. The first and only exception made to this established rule was that made by the act of Congress of July 4, 1836, now embodied in § 4920 Revised Statutes of the United States, U. S. Comp. Stat. 1901, p. 3394, wherein it is provided that anyone sued for infringement of a patent may show

"that he [the plaintiff] had surreptitiously or unjustly obtained the patent for that which was in fact invented by another, *who was using reasonable diligence in adapting and perfecting the same.*"

Nothing is said as to diligence on the part of the first to reduce to practice and no lack of diligence can be imputed to him, since he was in fact the first to give the invention to the public by a reduction to practice. The principle is well and clearly stated by Judge Taft, in delivering the opinion of the circuit court of appeals of the sixth circuit, in the case of *Christie* v. *Seybold,* 5 C. C. A. 33, 6 U. S. App. 520, 55 Fed. 69. In that case the judge said: "The diligence of the first reducer to practice is necessarily immaterial. It is not a race of diligence between the two inventors in the sense that the right to the patent is to be determined by comparing the diligence of the two, because the first reducer to practice, no matter what his diligence or want of it, is prior in right, unless the first conceiver was using reasonable diligence at the time of the second conception and the first reduction to practice."

The same principle has been announced by this court in several cases, referred to in the decisions in the Patent Office, and by counsel in their briefs. *Yates* v. *Huson,* 8 App. D. C. 93; *Bader* v. *Vajen,* 14 App. D. C. 241; *Austin* v. *Johnson,* 18 App. D. C. 83.

That Johnson conceived the invention and made disclosure thereof on or about the dates mentioned in his preliminary statement, and made drawings or sketches thereof on or about July 2, 1895, are facts established to the satisfaction of all the tribunals of the Patent Office, and in which findings we entirely concur. Indeed there is no serious question made of the correctness of such findings. But the real question being one of diligence on the part of Paul, and the proof being insufficient to establish the fact that he was exercising reasonable diligence at the time when Johnson entered the field, the latter, being first to reduce to practice, is entitled to the award of priority of invention, and the decision of the Commissioner of Patents must therefore be affirmed. It is accordingly so ordered. And

it is hereby directed that a certificate of the proceedings had on
this appeal and of this decision be made and returned to the
Commissioner of Patents, that the same may be entered of rec-
ord according to law.   Decision of Commissioner *affirmed and*
*certificate directed.*